IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MELODY HARRIS                                    PLAINTIFF/COUNTER-DEFENDANT

V.                                                      CIVIL ACTION NO. 1:10CV139-B-D

FIRST AMERICAN NATIONAL
BANCSHARES, INC., D/B/A/
FIRST AMERICAN NATIONAL BANK                     DEFENDANT/COUNTER-PLAINTIFF

## MEMORANDUM OPINION

Presently before the court is the defendant's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

### Factual and Procedural Background

The plaintiff, Melody Harris, filed this action alleging that her former employer, defendant First American National Bancshares, Inc., d/b/a First American National Bank ("FANB"), terminated her employment because of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The complaint also asserts state law claims that "include, but are not limited to, a handbook violation." The defendant denies the allegations and asserts that the plaintiff was terminated when she failed to follow proper banking policies and procedures after having been counseled for previous violations of the same.

Harris, an African-American female, was employed by AmSouth Bank at its Fulton, Mississippi, branch when FANB purchased the branch and certain other AmSouth Bank branch offices in 2006. She remained employed with FANB after the purchase and was ultimately promoted over white employees to the position of head teller of FANB's two Fulton branches on March 2, 2009.

The plaintiff asserts that after she accepted the head teller position, the tellers began refusing to perform their duties and were allowed to violate various bank rules without negative consequences because the branch manager and the plaintiff's supervisor, Tommy Chamblee, would not enforce the plaintiff's authority. She states that the tellers did not act in this manner under the supervision of the previous head teller, who was white.

The plaintiff further asserts that she was not provided an adequate staff in order to operate the two Fulton locations effectively and that she was often required to work through lunch breaks in order to complete her duties. She again asserts that this was not the situation with the previous head teller.

The plaintiff also complains that she was required to perform several duties that no other head teller in the FANB system was required to perform, though she provides the court with only one example, Deena McAnally, the Caucasian head teller at the bank's Booneville, Mississippi, branch, who according to the plaintiff's assertions and McAnally's deposition testimony, was not required to perform six tasks that the plaintiff claims she was required to perform. These tasks included supervising more than one branch, collecting past due loans, obtaining mail from the post office, dealing with foreclosed properties, insuring that security cameras were working properly, and stocking the ATM machine.

The defendant asserts that the plaintiff's employment was terminated for failure to follow internal operating procedures as well as general standard banking policies, specifically, for violating the time clock procedure and the money counting and verification procedure.

2

The time clock procedure requires that a teller who has already clocked out for lunch must clock back in before servicing a customer, even if she is still on her lunch break. After servicing the customer, the teller may then clock out again and continue her lunch break. In the alternative, the teller must complete a "time clock correction sheet." The defendant asserts that the plaintiff violated this rule at least fifteen times during a three-month period.

The money counting and verification procedure is considered a "dual control" matter. Bundles of money are counted first by one employee who straps the money and initials the strap and then by a second employee who unstraps it, counts the money, reapplies the strap, and initials it. After it was reported to Chamblee that the plaintiff was forging another employee's initials on dual control items, Chamblee addressed the matter in a staff meeting on July 16, 2009, and September 17, 2009. The plaintiff was present at both meetings and acknowledges that the importance of this procedure was stressed to her and the other employees. The plaintiff admits that she wrote the other employee's initials on the straps at issue. She further admits that after the July 16 meeting, she continued to violate the procedure by failing to obtain a dual control verification on a number of straps. The straps at issue contained only the plaintiff's initials – an admitted violation of the policy.

Lisa Phelps, FANB's comptroller and human resources manager, met with the plaintiff in Fulton on September 28, 2009, to speak with her about the aforementioned allegations. Phelps testified that the plaintiff would not answer or offer any excuse for her actions, leaving Phelps no choice but to terminate her employment for violations of the time clock policy and the dual control money verification policy.

The plaintiff filed the present action on May 21, 2010. The defendant filed a counterclaim seeking reimbursement of $3,930.27 plus costs, interest, and attorney's fees for tuition and expenses FANB paid to the plaintiff through the bank's school reimbursement program after the plaintiff completed classes at Itawamba Community College and the University of Mississippi. The defendant subsequently filed the present summary judgment motion, which addresses only the plaintiff's claims. Neither party has filed a dispositive motion in regard to the counterclaim.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Unsubstantiated assertions, improbable inferences,

and unsupported speculation are not sufficient to defeat a motion for summary judgment."

*Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-serving

"affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of

law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite*

*Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no

legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court

has cautioned, however, that the ruling court must not encroach upon the functions of the jury.

The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable
> inferences in favor of the nonmoving party, but making no credibility
> determinations or weighing any evidence. The latter functions, along with the
> drawing of legitimate inferences from the facts, are for the jury, not the court.
> Thus, although the court should review the record as a whole, it must disregard all
> evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed

cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235,

1241 (5th Cir. 1989).

<u>Analysis</u>

The parties agree that there is no direct evidence of discrimination in this case. In the

absence of direct evidence of discrimination, a plaintiff's Title VII claim is analyzed under the

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Under the framework, the

plaintiff must first establish a prima facie case of discrimination by demonstrating the following:

(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Once the plaintiff has established a prima facie case, "an inference of intentional discrimination is raised, and the burden of production shifts to the employer, who must offer an alternative nondiscriminatory explanation for the adverse employment action." *Id.* If the defendant can set forth a legitimate nondiscriminatory reason for its action, the burden then shifts back to the plaintiff who must show at "a new level of specificity" that the explanation is merely a pretext for discrimination. *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993). In the alternative, the plaintiff may show "that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611 (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). *See also* 42 U.S.C. § 2000e-2(m). If the plaintiff proceeds under the second option and successfully proves that her race played a motivating part in the employment action, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's [race] into account." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003) (applying Title VII "mixed-motive" analysis in a gender discrimination case).

Notwithstanding the shifting of "intermediate evidentiary burdens" under *McDonnell Douglas*, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." *Id.*

In the case sub judice, it is undisputed that the plaintiff is a member of a protected class and was subjected to an adverse employment action. It is also uncontested that she was qualified for the position of head teller at the time she was promoted, but of course, the defendant's position is that the plaintiff's policy and procedure violations rendered her no longer qualified at the time of her termination. The primary point of contention at the prima facie stage of the analysis in this case, however, is whether similarly situated employees outside the plaintiff's protected class were treated more favorably under nearly identical circumstances. The court finds that the plaintiff's case fails on this point.

The plaintiff makes much over the alleged differences in her duties in relation to the duties of her purported comparator, Deena McAnally, the head teller at FANB's Booneville branch. As set forth above, the plaintiff asserts that, unlike McAnally, she was required to supervise more than one branch, collect past due loans, obtain mail from the post office, deal with foreclosed properties, insure that security cameras were working properly, and stock the ATM machine. The plaintiff further asserts that she was required to transfer money in her own vehicle from one branch to another and that this duty could have potentially put her in peril.

The defendant offers the testimony of its comptroller and human resources manager, Lisa Phelps, who explains that the different branches of the bank have different managers who require different duties of their employees and different circumstances which account for the differences

in those duties. The plaintiff asserts that the disparity is a manifestation of race discrimination. The court would, of course, send this disputed fact question to the jury if it were material. Unfortunately for the plaintiff, it is not.

The plaintiff's focus on an alleged disparity in job duties misses the mark. The difference in the duties of one head teller in comparison to those of another has no relation to the adverse employment action in this case – i.e., the plaintiff's termination. The Fifth Circuit requires that "to establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001). The plaintiff has offered no comparator who violated the policies and procedures at issue in this case – or who committed any other violation, for that matter – and retained his or her position. To allow the plaintiff to utilize her termination as the requisite adverse employment action in a case ultimately about disparate duties would essentially be to allow her to merge two actions with insurmountable flaws – i.e., the absence of a proper comparator in one, the absence of an adverse employment action in the other – into one potentially successful case – all in contravention of Fifth Circuit case precedent. The Fifth Circuit "has held that only 'ultimate employment decisions,' such as hiring, granting leave, discharging, promoting, and compensating, satisfy the 'adverse employment action' element of a prima facie case . . . ." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001). *See also Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").

The consideration of job duties only comes into play in cases involving such employment actions as, for instance, shift changes, transfers, or demotions. The Fifth Circuit has held in those cases that if duties, pay, and benefits remain the same, the employer has not committed an adverse employment action. *Hunt*, 277 F.3d at 769. In that context, the focus is generally on the employee's "level of responsibility," and the question is whether the employment action amounts to a demotion. *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) ("We have held, along with many of our sister circuits, that employment actions are not adverse where pay, benefits, and level of responsibility remain the same."); *Benningfield*, 157 F.3d at 377 (acknowledging that a change in work hours, without more, is not an adverse employment action but that a transfer may, under certain circumstances, constitute a demotion).

In *Benningfield*, the plaintiff contended that, among other things, she was assigned an "unusually heavy work load" in retaliation for exercising her First Amendment right to free speech. *Id.* at 376. The Fifth Circuit characterized the plaintiff's contention as an "allegation[] involv[ing] administrative matters and . . . not employment actions." *Id.* at 377.

Because none of the perceived disparate treatment of which the plaintiff complains rises to the level of an adverse employment action or relates to one, no separate action based on those claims would survive the third prong of the prima facie test. Conversely, the action in this case which does meet the third prong, i.e., the plaintiff's termination, does not relate to the perceived disparate treatment.

In order to proceed to trial, the plaintiff is required to direct the court to evidence that another employee engaged in nearly identical conduct with disparate consequences, but she has

failed to do so.  The Fifth Circuit explained the plaintiff's burden in *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253 (5th Cir. 2009):

> [W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances."  The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.  *And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions.*  If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* at 260 (first emphasis added) (second alteration in original) (citations omitted).  While the Fifth Circuit requires that the plaintiff and her comparator be similarly situated and that their circumstances be nearly identical in various regards, the *Lee* court made it clear that the emphasis is on compared *conduct*.  The only comparator offered in the present case is Deena McAnally.  The plaintiff fails to present any evidence – nor has she even alleged – that McAnally engaged in nearly identical conduct with dissimilar consequences.  The plaintiff has neither shown nor alleged that McAnally or any other employee failed to initial dual control money straps or violated the time clock procedure and retained her employment.  And the proof need not be this specific.  As the court stated in *Lee*, "We do not . . . interpret 'nearly identical' as synonymous with 'identical.'"  *Id.*  The court reasoned that "a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical"  *Id.*  In the present case, however, the plaintiff has failed to show, or even to allege, *any* relevant

10

conduct on the part of another employee to compare to her own. Because the plaintiff has failed to show that she can establish the fourth prong of the prima facie case, the court must rule in favor of the defendant on its motion for summary judgment on the plaintiff's federal claim.

While the plaintiff's failure to set forth a prima facie case is dispositive, the court will also address the plaintiff's attempt to show that the defendant's reason for firing her is pretextual or that discrimination was, at least, a "motivating factor" in the termination. *See* 42 U.S.C. § 2000e-2(m). The plaintiff asserts that FANB "has a long history of treating African Americans differently than Caucasians." In support of this assertion, she places much weight on the testimony of Nikki Cauthern, a former African American head teller at the Fulton branch. Cauthern's testimony offers the plaintiff no help, however. When questioned as to whether Tommy Chamblee treated her differently than a white head teller named Leslie Hughes, Cauthern stated, "I can't say that he did, no." Shortly thereafter, however, she was again asked if Chamblee treated her the same way as he treated Hughes, and Cauthern answered, "I don't think he did. I think he treated us differently." When questioned if she had a reason or belief as to why she was treated differently, she answered, "I don't." The next question was, "Do you think race played into it in any manner?" Cauthern's answer was, "You know, you can't say." Later Cauthern was asked if she ever felt any animosity from her white co-workers because of her race. She answered, "I think because of my seniority . . . . I came from AmSouth, and I think they might be a little bit, because of the seniority, and I don't know if they knew what we were making, about us coming down, and I had more years of experience. I think that was an animosity there." Cauthern's testimony does not support the plaintiff's allegations, as she never alleges that she was treated differently because of her race.

11

The plaintiff also asserts that a disparity in the number of African American employees versus the number of white employees in the FANB system is evidence that race was a motivating factor in her termination. She, however, produces no evidence of a single African American applying for a position with the defendant or of the defendant's refusal or failure to hire African Americans. Instead, she relies on her own speculation, conjecture, and conclusory allegations. It is axiomatic that "conclusory facts . . . are insufficient to defeat a motion for summary judgment." *Clark*, 110 F.3d at 297.

Finally, the plaintiff contends that Chamblee did not enforce her authority when the white tellers under her supervision refused to perform their duties. She alleges that these employees were allowed to violate various bank rules without negative consequences. Again, however, she relies on her own conclusory allegations and produces no evidence that she presented Chamblee with a specific complaint on which he refused to act. The plaintiff revealed in her deposition that Chamblee instructed her to write down her complaints and that she complied, but when asked if she ever gave the written complaints to Chamblee, she indicated that she did not. Cauthern addressed a similar matter in her deposition, but once again Cauthern's testimony offers no help to the plaintiff. Cauthern testified that she had a similar experience of insubordination with a teller and that she took her grievance to Chamblee. When asked if he resolved the matter, Cauthern testified simply, "Well, of course, they [the insubordinate employee] turned it right back around on [me]." She offered no further explanation as to Chamblee's role in the referenced dispute.

Because the plaintiff has directed the court to no evidence of pretext or evidence that the plaintiff's race was a motivating factor in her termination, even assuming arguendo the existence

of a prima facie case, the court would nevertheless be compelled to grant the defendant's motion for summary judgment on the plaintiff's federal claim.

The court likewise finds in favor of the defendant on the plaintiff's alleged state law claim for a handbook violation. Mississippi is an "at will" employment state. *See Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999) ("[A]bsent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all . . . ."). "The Mississippi Supreme Court, though openly critical of the doctrine of at will employment, has been reluctant to end the concept." *McCrory v. Wal-Mart Stores, Inc.*, 755 So. 2d 1141, 1143 (Miss. App. 1999). The court has, however, carved out two exceptions to the at-will doctrine: "breach of contract or unlawful intentional acts such as terminating someone on account of his or her race." *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 741 (5th Cir. 2005). In regard to the contract exception, the court has held that an employee handbook is a part of the contract of employment. *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356, 361 (Miss. 1992). In *Bobbitt*, the court stated:

> We hold in this case that because the manual was given to all employees, it became a part of the contract. It did not give the employees "tenure," or create a right to employment for any definite length of time, but it did create an obligation on the part of [the defendant] to follow its provisions in reprimanding, suspending or discharging an employee for infractions specifically covered therein.

*Id.* The *Bobbitt* exception is not applicable, however, when an employer has avoided creating a contract of employment by requiring its employee to sign a disclaimer stating that the employee's continued employment remains at will. *Byrd v. Imperial Palace of Miss.*, 807 So. 2d 433, 438 (Miss. 2001); *Hartle v. Packard Elec.*, 626 So. 2d 106, 110 (Miss. 1993); *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088-89 (Miss. 1987).

The record in the case sub judice reflects that FANB required the plaintiff to sign, and she did sign, a disclaimer in keeping with those addressed by the Mississippi Supreme Court in the above-cited cases. The disclaimer states, in part: "I further acknowledge by signing below I am not entering into an employment contract, either express or implied." Harris' signature follows. The plaintiff has failed to offer any evidence or even a specific allegation as to how FANB violated its employee handbook; thus, the court would be required to enter summary judgment on those grounds. This lack of evidence is irrelevant, however, since Harris signed the aforementioned statement acknowledging that her employment was at will.

<u>Conclusion</u>

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is well taken and shall be granted, as there is no genuine issue of material fact in this case which would allow it to proceed to trial. A separate order in accord with this opinion shall issue this day.

This, the 13th day of October, 2011.

*/s/ Neal Biggers*
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**

14